IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiffs, <br><br> vs. <br><br> ALAN RUSSELL <br><br> Defendants. | 8:16CR256 <br><br> **FINDINGS AND RECOMMENDATION** |

This case involves a robbery of a U.S. Bank that occurred on April 30, 2014. Defendant Alan Russell ("Defendant") was indicted for this bank robbery on August 16, 2016. Defendant claims he has suffered actual prejudice from the approximate 2 year and 4 month delay between the commission of the crime and the indictment. Defendant claims he was prejudiced due to lost evidence and the failed memory of a witness. Defendant has filed a motion requesting that the charges levied against him in the indictment be dismissed. ([Filing No. 69](#).) Defendant argues that pre-indictment delay violated his rights under the Due Process Clause of the Fifth Amendment.

The Court held an evidentiary hearing on May 15, 2017. Defendant was present with his attorney, Mark Bubak. The United States was represented by Assistant United States Attorneys Russell Mayer and Susan Lehr. The Court heard testimony of Agent John Hallock ("Agent Hallock") and James Thomas, Sr. ("Thomas"). The Court received Exhibit 1 into evidence, as well as Exhibits 101 through 113. ([Filing No. 84](#).) A transcript (TR.) of the hearing was prepared and filed on June 15, 2017. ([Filing No. 99](#).) This matter was deemed fully submitted for disposition. Defendant then filed a Notice of Intent to Present Further Evidence regarding the Motion to Dismiss on June 30, 2017. ([Filing No. 104](#).) The Court held a hearing on the Notice on July 26, 2017. A transcript of the second hearing was prepared and filed on August 2, 2017. ([Filing No. 114](#)).

## BACKGROUND

Defendant's brother, Aaron Russell, was arrested on May 30, 2014 for allegedly robbing the Bank of Bennington ("Bennington robbery") on May 30, 2014. (TR. 18.) When Aaron Russell was interviewed by law enforcement, he implicated himself, Lavonte Prince ("Prince"), Lance Bartling, Jr. and Jordan Gregory in the robbery. In the interview, Aaron Russell described what Price was wearing and the weapon Prince was carrying during the Bennington robbery. Specifically, Aaron Russell stated that Prince was dressed in blue, and carrying an eight-inch pellet gun. (TR. 24.) The clothing and weapon description given by Aaron Russell as to Prince during the Bennington robbery was similar to what an individual was wearing and the weapon the person was carrying in a U.S. Bank robbery that occurred on April 30, 2014. (TR. 65.)

On July 7, 2014, Aaron Russell was interviewed and asked about the U.S. Bank robbery. Law enforcement showed Aaron Russell 14 surveillance photographs of the suspects in that robbery. (TR. 64.) Aaron Russell stated he could not identify any of the bank robbers and denied any involvement in the U.S. Bank robbery. (TR. 26, 47, 64.) Law enforcement interviewed Aaron Russell again on March 24, 2015. During the interview, he admitted that he robbed the U.S. Bank with Defendant and Marcus Sanders ("Sanders"). (TR. 48-49.) Aaron Russell identified Defendant as the person wearing the dark hoodie and carrying the long-barreled pellet gun in the U.S. Bank robbery.

Agent Hallock testified at the evidentiary hearing that when the Bennington robbery occurred, the Omaha Police Department crime lab processed the scene. (TR. 32.) Agent Hallock stated that it is normal police procedure to obtain a video of an incident if one is available. (TR. 31-33.) He further testified that it is normal procedure for the Omaha Police Department crime lab to book all evidence received. (TR. 32-36.) In this case, there were photographs and a disk with approximately 45 photographs booked into evidence. (TR. 33-36.) Agent Hallock testified that police never possessed a video of the robbery at the Bank of Bennington. (TR. 33-36.) Agent Hallock stated that he does not know if there ever was a video of the robbery. (TR. 38, 66.) Agent Hallock testified that he contacted the Bank of Bennington earlier this year to

determine if the Bank could obtain a video of the robbery, but he was told it would not be possible. (TR. 31-32.)

Agent Hallock further testified that when Aaron Russell was interviewed on March 24, 2015, and implicated Defendant and Sanders in the U.S. Bank robbery, Defendant and Sanders were not prosecuted because he needed to corroborate the information. (TR. 49, 68.) Agent Hallock stated that he tried to locate Sanders, but Sanders was no longer in Omaha. (TR. 49). Agent Hallock also contacted Defendant two days after Aaron Russell implicated him. However, Defendant did not want to speak to him. (TR. 61.) Agent Hallock testified that he was finally able to interview Sanders on August 3, 2016. At that time, Sanders admitted to participating in the U.S. Bank robbery. He also implicated Defendant and Aaron Russell as being involved in the robbery. (TR. 49-50, 54.) Defendant was indicted and charged with the U.S. Bank robbery on August 16, 2016. (TR. 54-55.)

## ANALYSIS

A defendant claiming a due process violation for pre-indictment delay must establish: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed the indictment either to gain a tactical advantage or to harass him. *United States v. Jackson,* 446 F.3d 847 (8th Cir. 2006); *United States v. Grap*, 368 F.3d 824, 829 (8th Cir. 2004); *United States v. Sprouts,* 282 F.3d 1037, 1041 (8th Cir. 2002). A court will only inquire into the reasons for delay where actual prejudice has been established. *United States v. Gladney,* 474 F.3d 1027, 1030-31 (8th Cir. 2007). "To establish actual prejudice, a defendant must identify witnesses or documents lost during the delay period." *Id*. at 1031. "[A]ctual prejudice cannot be established by defendant's speculative or conclusory claims of possible prejudice as a result of the passage of time." *Id*. The defendant bears the burden of showing that the lost testimony or information is not available through other means. *Id*.

Defendant maintains that he was prejudiced by pre-indictment delay because law enforcement and/or the government lost the video of the Bennington robbery. Although Defendant is not charged with the Bennington robbery, he asserts that one of the individuals

3

involved in that robbery was described as wearing similar clothes and carrying a similar weapon to the individual (later identified as Defendant) involved in the U.S. Bank robbery. Essentially, Defendant asserts that the Bennington robbery video will help him show that Prince, rather than Defendant, was the third robber in the U.S. Bank robbery. Defendant claims that the pictures from the Bennington robbery were poor quality and that the video would better show what transpired.

Defendant's argument on this point fails, however. The record in this matter shows that law enforcement and the government never possessed a video of the Bennington robbery. The only thing law enforcement and/or the government possessed were photos, which have all been turned over to Defendant. In fact, there is absolutely no evidence that the Bennington robbery was even videotaped. Agent Hallock testified that he does not know if a video existed and Defendant has not presented any evidence that a video existed. Therefore, Defendant has not met his burden regarding this issue.

Defendant also contends he has been prejudiced by the loss of the video of Aaron Russell's May 30, 2014 interview. At Defendant's request, the Court held an additional hearing on July 26, 2017, largely pertaining to this interview. All parties were present and Defendant offered exhibits 101 and 102, which were received. Exhibit No. 101 is Federal Bureau of Investigation Report by Agent Hallock. The report is a synopsis of his interview with Aaron Russell that occurred on May 30, 2014. The report indicates that the interview was audio and video recorded. Exhibit No. 102 is a Omaha Police Department Supplementary Report by Officer Alfred Orsi ("Officer Orsi"). The report deals with Officer Orsi's attempts to obtain the audio and video recording of Aaron Russell's May 30, 2014 interview. Officer Orsi was unable to retrieve the audio and video recordings of the interview because it had been erased. According to Exhibit No. 102, the interview was erased because all four suspects in the Bennington robbery plead guilty, and no request was made to download the interview. Officer Orsi also checked personal records, files and his computer for a copy of the interview. However, Officer Orsi could not locate a copy. Defendant argues that this loss of evidence strengthens his position that the indictment should be dismissed. The Court finds Defendant's argument unpersuasive.

4

Aaron Russell's May 30, 2014 interview pertains to the Bennington robbery. Defendant was not charged in that robbery. Agent Hallock has his notes from the interview and there is a synopsis report from the interview. The notes and report reveal that Aaron Russell did not discuss the U.S. Bank robbery during the interview. Defendant has not shown that he has been prejudiced by the loss of the video because both officers involved in the interview are available to testify. Moreover, the Court is unable to conclude that the destruction of this interview was intentional, or done to gain a tactical advantage or harass Defendant. The explanation as to why the video was not maintained, as set forth in Exhibit 102, is reasonable. No one could reasonably foresee that a defendant in an unrelated case would request this evidence.

Defendant also argues that he was prejudiced by the delay because the memory of one of his witnesses, James Thomas, Sr., has faded.[1] Defendant called Thomas to testify at the evidentiary hearing on this matter. Thomas is 76 years old and a former Omaha firefighter. Thomas testified that around the time of the U.S. bank robbery, Defendant was working for him doing various jobs and/or chores around his house and rental properties. (TR. 81.) Thomas stated that it is possible that Defendant was working for him on the day of the robbery, but he cannot recall with any certainty because his "recollection is not that good"[2] and too much time has passed. (TR. 81, 84.) Thomas acknowledged that he did not declare Defendant an employee. (TR. 85.) He also testified that he paid Defendant for his work, but that he did not have canceled checks because he paid Defendant in cash. (TR. 85.) Thomas acknowledged that Defendant had been working for him for almost six years, but that he has no documentation for any of the work performed. (TR. 85-86.) Thomas testified that he called his cell phone provider,

---

[1] Defendant also claims in his motion that he assisted an individual with a car repair on the date of the U.S. Bank robbery. ([Filing No. 69](Filing No. 69).) Defendant maintains that he has been prejudiced by pre-indictment delay because this individual is unable to clearly recall the date and time that Defendant assisted him. Defendant further claims that, due to lapse of time, records of the purchase of the auto part used in the repair cannot be obtained. The individual who Defendant allegedly assisted did not testify at the evidentiary hearing and no evidence to support this argument was presented. Therefore, the Court will not consider this argument in its ruling.

[2] Thomas indicated that it was possible Defendant was assisting him because he was working full-time at the fire department. (TR. 81.) However, on cross-examination, the government pointed out that Thomas had already retired from the fire department at the time the robbery occurred. (TR. 86-87.)

AT&T, and asked the provider to send his phone records for a week before through a week after the date of the robbery. (TR. 82.) Thomas stated that he has not received the records yet. (TR. 82.)

Although time has passed since the U.S. Bank robbery, lapse of time is not the cause of Thomas' difficulty recalling the dates that Defendant worked for him. Rather, the reason for this difficulty is Thomas' failure to document Defendant's work. Even if the indictment had been filed sooner, there still would be no records to jog Thomas' memory. In addition, Thomas has ordered his cell phone records from AT&T. Therefore, there may still be a way to get the information Defendant seeks. Lastly, it is pure speculation as to whether Defendant was working for Thomas at the time of the robbery. *See United States v. Mays,* 549 F.2d 670 (9th Cir. 1977) (finding that mere showing that some witnesses had died and that other witnesses' memories had faded, without indicating what the testimony of such witnesses would have been, did not show actual prejudice). Therefore, it is impossible to evaluate Thomas' contribution to the defense against the charges. Defendant has not met his burden to show prejudice.

Even if the Court could find that Defendant has been prejudiced by the delay, he would still have to show that the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. Defendant cannot make such a showing. "The Supreme Court has recognized that 'the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure that an indictment is well founded.'" *Jackson,* 446 F.3d at 849 (quoting *United States v. Eight Thousand Eight Hundred and Fifty Dollars,* 461 U.S. 555, 563 (1983)). Prosecutors are "under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish a suspect's guilt beyond a reasonable doubt." *United States v. Lovasco,* 431 U.S. 783, 791 (1977). Nor is there a constitutional requirement that charges be filed after there is sufficient evidence to prove such guilt, but before the investigation is complete. *Id.* at 793-94. An immediate arrest or indictment might impair the prosecutors' ability to continue the investigation or obtain additional indictments, would pressure prosecutors into resolving doubtful cases in favor of early (and possibly unwarranted) prosecutions, and would preclude full consideration of the desirability of not prosecuting in

6

certain cases. *Id*. Prosecutors "do not deviate from fundamental conceptions of justice when they defer seeking indictments until they have probable cause to believe an accused is guilty." *Id.* at 790-91. It would be "unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause." *Id.* at 791.

The government brought a case against Defendant at its first opportunity. Agent Hallock testified that the government did not have sufficient evidence to bring charges against Defendant until Sanders met with law enforcement on August 3, 2016. Although Defendant's name was mentioned by his brother on March 24, 2015, Defendant's participation in the robbery was not corroborated until Sanders was interviewed. Defendant was indicted 13 days later. In addition, Agent Hallock testified that he attempted to contact Defendant two days after Aaron Russell implicated him, but Defendant refused to speak to him. (TR. 61.) Prosecutors cannot bring charges unless they have probable cause to believe a defendant is guilty. It would be unethical to do otherwise. There is absolutely no evidence that the government intentionally delayed Defendant's indictment either to gain a tactical advantage or to harass Defendant.

Accordingly,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Laurie Smith Camp that Defendant's Motion to Dismiss for Pre-Indictment Delay (Filing No. 69) be denied.

Dated this 15th day of August, 2017.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.